**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

No. 17-4573

———————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MARY MOONEY,

Defendant - Appellant.

———————

Appeal from the United States District Court for the District of South Carolina, at Beaufort.  David C. Norton, District Judge.  (9:14-cr-00054-DCN-2)

———————

Argued:  December 13, 2018                    Decided:  February 28, 2019

———————

Before WILKINSON, HARRIS, and QUATTLEBAUM, Circuit Judges.

———————

Affirmed in part and dismissed in part by unpublished opinion.  Judge Harris wrote the opinion, in which Judge Wilkinson and Judge Quattlebaum joined.

———————

**ARGUED:**  Joshua Snow Kendrick, KENDRICK & LEONARD, P.C., Greenville, South Carolina, for Appellant.  Derek J. Ettinger, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.  **ON BRIEF:**  Sherri A. Lydon, United States Attorney, Columbia, South Carolina, Jamie Lea Schoen, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, South Carolina, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PAMELA HARRIS, Circuit Judge:

Mary Mooney pleaded guilty to knowingly making a false statement to an entity responsible for accrediting adoption service providers, in violation of 42 U.S.C. § 14944(c). But shortly after signing her plea agreement, Mooney moved to withdraw her plea, arguing that § 14944(c) does not apply to her false statements as a matter of law, and so she cannot be guilty of violating that provision. The district court denied Mooney's motion, sentenced her to a term of imprisonment, and imposed a restitution obligation.

Mooney has now appealed, and the government has moved to dismiss that appeal based on the appeal waiver in Mooney's plea agreement. Mooney contends that her appeal should not be dismissed because her argument – that § 14944(c) does not prohibit her conduct – implicates the validity of her underlying guilty plea. We agree with Mooney that her appeal waiver does not foreclose consideration of that argument. On the merits, however, we disagree with Mooney, and conclude that § 14944(c) does indeed cover her false statements. And because Mooney's appeal waiver is otherwise valid, it forecloses her remaining claims on appeal. Accordingly, we affirm the district court's denial of Mooney's plea-withdrawal motion and Mooney's resulting conviction, and dismiss the remainder of her appeal.

## I.

### A.

Mary Mooney was the executive director of International Adoption Guides ("IAG"), an organization that provided consulting and logistics services to parents seeking to adopt children from outside the United States. In 2006, Mooney applied for accreditation for IAG under the Intercountry Adoption Act of 2000, 42 U.S.C. §§ 14901–14954, which governs international adoptions. To become accredited under the Act, an adoption service provider like IAG must apply to an "accrediting entity" designated by the State Department. *See* 42 U.S.C. §§ 14902(2), 14922(a). That entity then considers whether the provider satisfies specific professional requirements. *See id.* § 14923(b) (establishing minimum requirements for accreditation); *see also* 22 C.F.R. §§ 96.29–.55 (outlining additional accreditation requirements). If accredited, the adoption service provider must continue to submit annual statements to the accrediting entity, confirming that it remains in substantial compliance with all relevant requirements. *See* 22 C.F.R. § 96.66(c).

In this case, Mooney submitted her application on behalf of IAG to the Council on Accreditation, a designated accrediting entity, and the Council granted Mooney's application in 2008. Shortly after, Mooney agreed to sell IAG to James Harding. Harding previously had applied for accreditation for his own adoption service organization, but that application had been denied because Harding lacked the qualifications required by regulation to run such an organization. So Mooney and Harding agreed that once Mooney sold IAG to Harding, Harding would assume day-to-day control as the executive in charge of IAG's operations, but Mooney would remain executive director in name only so that IAG could maintain its accreditation.

3

Neither Mooney nor Harding notified the Council on Accreditation of this change in leadership. And in 2010 and 2011, in order to preserve IAG's accredited status, Mooney made the statements that eventually formed the basis for the plea at issue in this appeal: Mooney submitted statements to the Council falsely claiming that she remained in control of IAG, and that the organization continued to be in substantial compliance with all applicable regulations – even though Harding, who lacked the required educational and professional qualifications, actually was in charge.

The government soon had reason to suspect that Mooney was doing more than making false statements, and in fact was engaged in a scheme to facilitate fraudulent adoptions. Specifically, emails between Mooney and her coworkers revealed that IAG was paying Ethiopian orphanages to sign contracts giving specific children up for adoption when those children never had lived in the orphanages, and may not even have been orphans. The government also uncovered evidence that Mooney's employees then submitted those false contracts to Ethiopian courts and the U.S. State Department to expedite the children's adoptions.

**B.**

Based on this evidence, Mooney and three of her coworkers, including Harding, were indicted for conspiracy to defraud the United States, in violation of 18 U.S.C. § 371. Harding and another co-defendant pleaded guilty to that conspiracy.[1] But Mooney

---

[1] Mooney's third co-defendant is a foreign national who is thought to be a fugitive residing in Ethiopia.

refused to do so.  Instead, shortly before trial, Mooney asked the government if she could plead guilty to a violation of 42 U.S.C. § 14944(c), which prohibits the making of a false statement to an accrediting entity in order to obtain or maintain accreditation.[2]  The government agreed that Mooney could plead guilty to that less serious offense, and provided her with a list of false statements she had made to the Council on Accreditation. As the basis for her plea, Mooney chose the 2010 and 2011 statements in which she confirmed that she was executive director of IAG and that IAG was in compliance with all relevant regulations – when in reality Harding, who lacked the qualifications required by regulation, had assumed control of the organization.[3]

The government included those statements in an information charging Mooney with a violation of 42 U.S.C. § 14944(c), and based on that information, Mooney and the government entered into a written plea agreement.   In the plea agreement, the government agreed to dismiss the original conspiracy charge, and in exchange, Mooney agreed to plead guilty to the § 14944(c) violation and to waive her right to appeal her conviction and sentence.

---

[2]  Specifically, § 14944(c) imposes criminal penalties on any person who "knowingly and willfully" violates § 14944(a)(2).  42 U.S.C. § 14944(c).  Section 14944(a)(2), in turn, prohibits making a material false statement "intended to influence or affect . . . a decision by an accrediting entity with respect to the accreditation of an agency."  *Id.* § 14944(a)(2)(A).

[3] Mooney also selected a third statement she made to the Council in 2007:  a list of IAG employees providing adoption services that failed to mention one such employee. Because the government has conceded that the 2007 statement was not a "false statement" for purposes of § 14944(c), we do not consider that statement here.

In January 2015, the district court conducted a thorough plea colloquy to determine whether to accept Mooney's guilty plea under Federal Rule of Criminal Procedure 11. During the colloquy, the government reviewed the facts it would prove at trial: that Mooney made the 2010 and 2011 statements to the Council about IAG's compliance with the regulations and that she knew those statements were false. Mooney agreed that those facts were accurate.

The court also asked Mooney a series of questions about whether she fully understood the proceedings, whether she was satisfied with her counsel, whether her counsel had explained the nature of the charges against her, whether she understood those charges, and whether she voluntarily signed the plea agreement. Mooney answered all of those questions in the affirmative. Finally, the court reviewed the rights that Mooney waived through her plea agreement, including, specifically, the right to appeal her conviction and sentence. Mooney confirmed that she both understood and agreed to this waiver of her appeal rights. Accordingly, the court accepted Mooney's plea, finding that it was knowingly and voluntarily made with a basis in fact encompassing all elements of the § 14944(c) crime.

Before she was sentenced, Mooney moved to withdraw her plea. Although Mooney conceded that the Rule 11 colloquy was properly conducted and comprehensive, she argued that she was rushed into the plea agreement, leaving her attorney without time to thoroughly research the elements of a § 14944(c) offense. But now, Mooney argued, she had discovered that § 14944(c) in fact did not apply to her 2010 and 2011 false statements, so that her guilty plea was to a non-existent criminal offense.

Mooney's argument was as follows: When Mooney made her false statements in 2010 and 2011, the Intercountry Adoption Act required accreditation only of those organizations conducting adoptions under the Hague Convention on Protection of Children and Co-operation in Respect of Intercountry Adoption.[4] It followed, Mooney argued, that the prohibition on false statements to accrediting entities laid out in § 14944 applied only to organizations then conducting adoptions in countries that were parties to the Hague Convention. And, Mooney finished, because IAG provided adoption services in 2010 and 2011 only in connection with two countries that were not parties to the Hague Convention and thus did not require accreditation – Ethiopia and Kazakhstan – her false statements to her accrediting entity could not constitute violations of § 14944(c).

After a hearing, the district court denied Mooney's motion to withdraw her plea, rejecting Mooney's argument that § 14944(c) did not apply to her false statements. The district court recognized that when Mooney made her false statements, she may not have been *required* to seek accreditation for IAG. But, the district court explained, "the fact remains that [Mooney] *did seek accreditation* (regardless of whether it was required)." J.A. 153. And once Mooney applied for accreditation, § 14944 "plainly made it a crime" to make false statements to her accrediting entity in order to influence its decision. *Id.*

---

[4] An adoption falls under the Hague Convention if it is "an adoption of a child resident in a foreign country party to the Convention by a United States citizen, or an adoption of a child resident in the United States by an individual residing in another Convention country." 42 U.S.C. § 14902(10).

The district court thus found no basis to permit Mooney to withdraw her plea, and denied her motion.

The district court eventually sentenced Mooney to 18 months' imprisonment and three years' supervised release, and imposed a restitution obligation of $223,964.04. Shortly after sentencing, Mooney filed this appeal, challenging the district court's denial of her motion to withdraw her guilty plea as well as the court's sentence and restitution order.

## II.

### A.

We begin with Mooney's appeal of the district court's denial of her motion to withdraw her guilty plea. The government contends that this challenge must be dismissed before we reach its merits because Mooney waived her right to appeal in her plea agreement. We disagree. It is undisputed that Mooney's plea agreement includes a waiver of Mooney's right to appeal her conviction. But that does not end the matter, because when a defendant challenges the denial of a motion to withdraw her guilty plea, as Mooney does here, "a waiver of appeal rights in a plea agreement will not bar appellate review" if "the plea-withdrawal motion incorporates a colorable claim that the plea agreement itself – and hence the waiver of appeal rights that it contains – is tainted by constitutional error." *United States v. Attar*, 38 F.3d 727, 733 n.2 (4th Cir. 1994) (emphasis omitted).

Mooney's motion to withdraw her plea meets that standard, raising a colorable claim that her plea was constitutionally infirm. The primary contention in support of Mooney's motion is that no one – not her counsel, not the government, and not the court – understood or informed her that § 14944(c), correctly interpreted, does not criminalize the false statements that were the basis for her guilty plea. That is enough to call into question the constitutional validity of that plea. A guilty plea is constitutionally sound only to the extent that it is "voluntary" and "intelligent," and "a plea does not qualify as intelligent unless a criminal defendant first receives real notice of the true nature of the charge against [her]." *Bousley v. United States*, 523 U.S. 614, 618 (1998) (internal quotation marks omitted). If a criminal defendant is *not* correctly informed as to "the essential elements of the crime" to which she pleads guilty – and so pleads guilty based on conduct that in fact does not satisfy those elements – then her plea is constitutionally invalid. *Id.* at 618–19. Because Mooney has advanced a colorable claim that, if correct, would "taint[] [with] constitutional error" her guilty plea and the appeal waiver it contains, *Attar*, 38 F.3d at 733 n.2, that appeal waiver does not bar our review of Mooney's challenge to the denial of her plea-withdrawal motion.

**B.**

On the merits, however, Mooney cannot succeed. The crux of Mooney's claim, as noted above, is that the district court should have permitted her to withdraw her guilty plea because she did not understand, at the time the plea was entered, that § 14944(c) as a matter of law did not prohibit her false statements. Because we agree with the district

court that § 14944(c) in fact does apply to Mooney's conduct, we affirm the district court's denial of Mooney's plea-withdrawal motion and Mooney's resulting conviction.[5]

Section 14944(c) makes it a crime to lie to an accrediting entity – like the Council on Accreditation – in order to obtain or maintain accreditation. *See* 42 U.S.C. §§ 14944(a)(2)(A), (c). Specifically, § 14944(c) subjects to criminal penalties any person who "knowingly and willfully" makes a material false statement "intended to influence or affect . . . a decision by an accrediting entity with respect to the accreditation of an agency . . . under subchapter II" of the statute at issue here. *Id.* Subchapter II, in turn, describes the procedures accrediting entities follow and the standards they apply in deciding whether to grant new accreditations or maintain old ones.[6] Taken together, these provisions make clear that once an individual like Mooney decides to invoke the accreditation process described in subchapter II, it is a crime for that individual to lie to the accrediting entity.

---

[5] Mooney also argues briefly that she is factually innocent of the § 14944(c) crime to which she pleaded guilty because the statements she made to the Council on Accreditation were not false. But during the district court's comprehensive Rule 11 plea colloquy, Mooney agreed that her 2010 and 2011 statements to the Council were false, and that she knew they were false when she made them. Mooney cannot now overcome those admissions "by merely contradicting inculpatory statements made during the Rule 11 plea hearing or by arguing that facts that were known to [her] at the time of the plea negate [her] guilt." *United States v. Thompson-Riviere*, 561 F.3d 345, 353 n.6 (4th Cir. 2009).

[6] *See* 42 U.S.C. § 14922 (describing the process for accreditation and approval and the role of accrediting entities); *id.* § 14923 (explaining the minimum standards agencies must meet to obtain accreditation); *id.* § 14924 (describing the Secretary of State's oversight of the accreditation process).

That is precisely what Mooney did here. Mooney chose to apply for accreditation on behalf of IAG in 2006. And once she received that accreditation, she made false statements to the Council in order to maintain it. Specifically, in 2010 and 2011, Mooney told the Council that IAG was in substantial compliance with relevant regulations and that she was in charge of the organization – even though she knew that an individual who lacked the required educational and professional qualifications in fact had assumed control. That is all that is necessary to bring Mooney's conduct within the ambit of § 14944(c).

Mooney argues, as described above, that § 14944(c)'s criminal prohibition on false statements does not apply to her 2010 and 2011 statements because she was not at that time active in Hague Convention countries, and so not required by law to accredit her organization. But nothing in the text of § 14944(c) limits its application to false statements made in connection with a *mandatory* accreditation. The Intercountry Adoption Act allows any agency to apply for accreditation, regardless of whether accreditation is legally required. And under the plain and broad terms of § 14944, "[*a*]*ny* person" who makes a false statement to influence the decision of an accrediting entity is subject to criminal penalties. 42 U.S.C. §§ 14944(a)(2)(A), (c) (emphasis added). As the district court explained, what matters under § 14944(c) is not whether Mooney was *required* to seek accreditation; what matters is that she *did* seek accreditation, and then made false statements to maintain that accreditation.

Contrary to Mooney's suggestion, there is nothing anomalous about this result. As both Mooney and Harding acknowledged during their criminal proceedings, adoption

service providers may choose to seek accreditation even if they are not required to do so, in part because prospective clients may insist on such accreditation. Indeed, many of the families who were victims of Mooney's scheme attested that they would not have hired IAG to facilitate their international adoptions had the organization not been accredited. Whether or not they are legally required, fraudulently obtained accreditations can be used to solicit unwitting victims, and Congress had perfectly sensible cause to prohibit such fraud by any person seeking accreditation.

For her contrary reading of the statute, Mooney relies primarily on the fact that the relevant text of § 14944 references "subchapter II" – prohibiting false statements intended to influence an accrediting entity's decision "with respect to the accreditation of an agency . . . under subchapter II," 42 U.S.C. § 14944(a)(2)(A) – and that subchapter II, in turn, includes the provision requiring accreditation for agencies facilitating Hague Convention adoptions, *see id.* § 14921(a)(1). We can infer from that, Mooney argues, that Congress intended the bar on false statements in § 14944(c) to apply only to false statements made by organizations providing Hague Convention adoptions. But there is no basis for that inference. When Congress wanted to limit the provisions of the Intercountry Adoption Act to Hague Convention adoptions, it said so directly; for an example, we need look no further than § 14944 itself, which includes a subsection prohibiting false statements in connection with the relinquishment of parental rights that is expressly limited to "case[s] subject to the [Hague] Convention," *id.* § 14944(a)(2)(B). The reference to "accreditation . . . under subchapter II," by contrast, captures the whole

12

of subchapter II, which lays out in detail the process and standards for accreditation that Congress chose to protect from the influence of false or fraudulent statements.

Mooney also points to the Intercountry Adoption Universal Accreditation Act of 2012, 42 U.S.C. § 14925, under which all agencies conducting intercountry adoptions – and no longer only agencies operating in Hague Convention countries – are required to obtain accreditation. According to Mooney, because Congress decided in 2012 that accreditation-related provisions applicable only to Hague Convention adoptions henceforth should apply to all intercountry adoptions, the rough inverse must also be true: Before 2012, when she made her false statements, the general prohibition on accreditation fraud must have applied only to Hague Convention adoptions. We fail to see why this would be so. To the extent certain of the Intercountry Adoption Act's provisions were limited to organizations facilitating Hague Convention adoptions – like, for instance, § 14944(a)(2)(B)'s prohibition on false statements regarding the relinquishment of parental rights, discussed above – then the Universal Accreditation Act clarifies that they now apply to all intercountry adoptions. *See* 42 U.S.C. § 14925(a). And to the extent the Intercountry Adoption Act's provisions already extended beyond Hague Convention adoptions – like the prohibition on false statements intended to influence accreditation that is at issue in this case – then they continue to do so under the Universal Accreditation Act.

In sum, the district court correctly held that § 14944(c) prohibits the making of a false statement to an accrediting entity to influence the accreditation decision, regardless of whether that accreditation is legally required. Mooney admitted that she committed

that crime during the district court's extensive Rule 11 plea colloquy, when she agreed that she lied in her 2010 and 2011 statements to the Council on Accreditation. Because Mooney correctly understood that § 14944(c) applied to her conduct when she entered her guilty plea, the district court did not err in denying her motion to withdraw that plea. Accordingly, we affirm both the district court's denial of the plea-withdrawal motion and Mooney's resulting conviction.

### III.

Mooney also seeks to appeal her sentence and restitution obligation. Again, the government moves to dismiss these challenges based on Mooney's appeal waiver. This time, we agree with the government, and so we dismiss these portions of Mooney's appeal.

We will enforce an appeal waiver, and dismiss an appellant's challenges, if the waiver "is valid and the issue appealed is within the scope of the waiver." *United States v. Copeland*, 707 F.3d 522, 528 (4th Cir. 2013) (internal quotation marks omitted). Mooney's only attack on the validity of her appeal waiver is her argument that her conduct fell outside the scope of § 14944(c), and we have rejected that argument. The only remaining question is whether Mooney's sentencing and restitution claims fall within the scope of that valid waiver.

We conclude that they do. In her plea agreement, Mooney agreed to make full restitution, and waived her right "to contest either the conviction or the sentence in any direct appeal," J.A. 52–53. Although we have recognized that a "narrow class" of

14

sentencing and restitution challenges can fall outside the scope of such a broad waiver, *United States v. Blick*, 408 F.3d 162, 171 (4th Cir. 2005) (internal quotation marks omitted), Mooney's challenges do not fall within that class. Accordingly, we dismiss Mooney's appeal of her sentence and restitution obligation.


## IV.

For the foregoing reasons, we affirm the district court's denial of Mooney's plea-withdrawal motion and Mooney's resulting conviction, and dismiss the remainder of her appeal.

*AFFIRMED IN PART AND DISMISSED IN PART*