IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | No. 9:14-cr-00054-DCN-2 |
| vs. | ) | |
| | ) | **ORDER** |
| MARY MOONEY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the court on defendant Mary Mooney's ("Mooney") motion

to vacate, set aside, or correct her federal sentence pursuant to 28 U.S.C. § 2255, ECF

No. 336. For the reasons set forth below, the court denies the motion.

## I.   BACKGROUND

Mooney was the owner and executive director of International Adoption Guides

("IAG"), an organization that provided consulting and logistics services to parents

seeking to adopt children from outside the United States. In 2006, Mooney applied for

accreditation for IAG under the Intercountry Adoption Act of 2000, 42 U.S.C. §§ 14901–

14954 (the "Act"), which governs international adoptions. To become accredited under

the Act, an adoption service provider like IAG must apply to an "accrediting entity"

designated by the State Department. See 42 U.S.C. §§ 14902(2), 14922(a). That entity

then considers whether the provider satisfies specific professional requirements. See id. §

14923(b) (establishing minimum requirements for accreditation); see also 22 C.F.R. §§

96.29–.55 (outlining additional accreditation requirements). If accredited, the adoption

service provider must continue to submit annual statements to the accrediting entity,

confirming that it remains in substantial compliance with all relevant requirements. See

22 C.F.R. § 96.66(c). In this case, Mooney submitted her application on behalf of IAG to

1

the Council on Accreditation ("COA"), a designated accrediting entity, and the COA granted Mooney's application in 2008.  Shortly thereafter, Mooney agreed to sell IAG to James Harding ("Harding").  Harding had previously applied for accreditation for his own adoption service organization, but that application had been denied because Harding lacked the qualifications required by regulation to run such an organization.  Mooney and Harding agreed that once Mooney sold IAG to Harding, Harding would assume day-to-day control as the executive in charge of IAG's operations, but Mooney would remain executive director in name only so that IAG could maintain its accreditation.  Neither Mooney nor Harding notified the COA of this change in leadership.  In 2010 and 2011, in order to preserve IAG's accredited status, Mooney made the statements that eventually formed the basis for the plea at issue in this appeal: Mooney submitted statements to the COA falsely claiming that she remained in control of IAG and that the organization continued to be in substantial compliance with all applicable regulations—even though Harding, who lacked the required educational and professional qualifications, was actually in charge.

The government soon had reason to suspect that Mooney was doing more than making false statements and in fact was engaged in a scheme to facilitate fraudulent adoptions.  Specifically, emails between Mooney and her coworkers revealed that IAG was paying Ethiopian orphanages to sign contracts giving specific children up for adoption when those children had never lived in the orphanages and may not have even been orphans.  The government also uncovered evidence that Mooney's employees then submitted those false contracts to Ethiopian courts and the U.S. State Department to expedite the children's adoptions.  Based on this evidence, Mooney and three of her

coworkers, including Harding, were indicted for conspiracy to defraud the United States, in violation of 18 U.S.C. § 371.  Harding and another co-defendant pleaded guilty to that conspiracy.  Mooney refused to do so.  Instead, shortly before trial, Mooney asked the government if she could plead guilty to a violation of 42 U.S.C. § 14944(c), which prohibits the making of a false statement to an accrediting entity in order to obtain or maintain accreditation.  The government agreed that Mooney could plead guilty to that less serious offense and provided her with a list of false statements she had made to the COA.  As the basis for her plea, Mooney chose the 2010 and 2011 statements in which she confirmed that she was executive director of IAG and that IAG was in compliance with all relevant regulations—when in reality Harding, who lacked the qualifications required by regulation, had assumed control of the organization.  The government included those statements in an information charging Mooney with a violation of 42 U.S.C. § 14944(c), and based on that information, Mooney and the government entered into a written plea agreement.

In the plea agreement, the government agreed to dismiss the original conspiracy charge, and in exchange, Mooney agreed to plead guilty to the § 14944(c) violation and to waive her right to appeal her conviction and sentence.  In January 2015, Judge Sol Blatt, Jr. conducted a thorough plea colloquy to determine whether to accept Mooney's guilty plea under Federal Rule of Criminal Procedure 11.  During the colloquy, the government reviewed the facts it would prove at trial: that Mooney made the 2010 and 2011 statements to the COA about IAG's compliance with the regulations and that she knew those statements were false.  Mooney agreed that those facts were accurate.  The court also asked Mooney a series of questions about whether she fully understood the

3

proceedings, whether she was satisfied with her counsel, whether her counsel had explained the nature of the charges against her, whether she understood those charges, and whether she voluntarily signed the plea agreement. Mooney answered all of those questions in the affirmative. Finally, the court reviewed the rights that Mooney waived through her plea agreement, including, specifically, the right to appeal her conviction and sentence. Mooney confirmed that she both understood and agreed to this waiver of her appeal rights. Accordingly, the court accepted Mooney's plea, finding that it was knowingly and voluntarily made with a basis in fact encompassing all elements of the § 14944(c) crime.

Before she was sentenced, Mooney moved to withdraw her plea. Although Mooney conceded that the Rule 11 colloquy was properly conducted and comprehensive, she argued that she was rushed into the plea agreement, leaving her attorney without time to thoroughly research the elements of a § 14944(c) offense. Thereafter, Mooney argued, she discovered that § 14944(c) in fact did not apply to her 2010 and 2011 false statements, such that her guilty plea was to a non-existent criminal offense. Mooney's argument was as follows: When Mooney made her false statements in 2010 and 2011, the Intercountry Adoption Act required accreditation only of those organizations conducting adoptions under the Hague Convention on Protection of Children and Co-operation in Respect of Intercountry Adoption (the "Hague Convention"). It followed, Mooney argued, that the prohibition on false statements to accrediting entities laid out in § 14944 applied only to organizations then conducting adoptions in countries that were parties to the Hague Convention. And, Mooney finished, because IAG provided adoption services in 2010 and 2011 only in connection with two countries that were not parties to the

Hague Convention and thus did not require accreditation—Ethiopia and Kazakhstan—her false statements to her accrediting entity could not constitute violations of § 14944(c). After a hearing, the court denied Mooney's motion to withdraw her plea, rejecting Mooney's argument that § 14944(c) did not apply to her false statements. The court recognized that when Mooney made her false statements, she may not have been required to seek accreditation for IAG. But, the court explained, the fact remained that Mooney did seek accreditation—regardless of whether it was required. And once Mooney applied for accreditation, § 14944 plainly made it a crime to make false statements to her accrediting entity in order to influence its decision. The court thus found no basis to permit Mooney to withdraw her plea and denied her motion.

The United States Probation Office ("USPO") prepared the first presentence report ("PSR") on November 12, 2015. The first PSR found a loss amount of $100,000 and did not apply an enhancement for the number of victims. Both Mooney and the government objected to the loss amount, with the government requesting that the gain from all the adoptions be included in the loss calculation, and the defense requesting a loss amount of zero. On March 28, 2016, USPO revised the PSR to find no loss and no victims. The government objected to the revised PSR regarding the loss amount and victims, arguing that all the families adopting from Ethiopia and Kazakhstan who paid IAG for legitimate adoptions from a COA-approved company were the victims. On May 6, 2016, the government filed a sentencing memorandum, pursuing its objections to the PSR and, in the alternative, moving for an upward variance. The court set a hearing for June 16, 2016. Mooney submitted a sentencing memorandum with thirteen exhibits. ECF No. 207. On November 7, 2016, the court issued its order on the objections, ruling

that the Kazakhstan adoptions should be counted for the loss amount, but the Ethiopia adoptions should not. On June 21, 2017, a new PSR was prepared.

On June 28, 2017, Mooney again submitted objections to the PSR concerning the loss amount, the number of victims, and restitution. On August 7, 2017, Mooney also filed an additional sentencing memorandum. On August 10, 2017, the undersigned held the sentencing hearing and issued a sentencing order on September 6, 2017. At the sentencing hearing, the court acknowledged that the basis for the loss was not that Kazakhstan was a party to the Hague Convention, but rather that Kazakhstan on its own was requiring international adoptions agencies to have COA accreditation to adopt children from Kazakhstan. The court considered Mooney's arguments under the 18 U.S.C. § 3553(a) factors, denied the government's request for an upward variance, and granted Mooney's request for a downward departure from the guideline range of thirty-three to forty months. The court ultimately sentenced Mooney to eighteen months' imprisonment and three years' supervised release and imposed a restitution obligation of $223,964.04.

On September 12, 2017, Mooney filed an appeal on three issues: (1) whether the statute she pleaded guilty to applied to her conduct (i.e., whether she should have been permitted to withdraw her plea); (2) whether the court properly calculated the loss amount; and (3) and whether the restitution award was in error. On February 28, 2019, the Fourth Circuit affirmed the conviction. The Fourth Circuit explained that the Intercountry Adoption Act allows any agency to apply for accreditation, regardless of whether accreditation is legally required. And under the plain and broad terms of § 14944, any person who makes a false statement to influence the decision of an

accrediting entity is subject to criminal penalties. On March 14, 2019, Mooney requested rehearing en banc, which was denied. During the course of her prosecution, Mooney was represented by five different attorneys, with Mooney relieving and requiring new counsel seemingly at every turn.

On October 17, 2019, Mooney, proceeding pro se, filed the instant petition to vacate, set aside, or correct her sentence under 28 U.S.C. § 2255. ECF No. 336. On May 15, 2020, the government responded in opposition. ECF No. 354. Mooney replied on August 17, 2020, ECF No. 364, and then again on August 27, 2021, ECF No. 376. As such, the motion has been fully briefed and is ripe for the court's review.

## II. STANDARD

Federal district courts are charged with liberally construing petitions filed by pro se litigants to allow the development of a potentially meritorious case. See Hughes v. Rowe, 449 U.S. 5, 9–10 (1980). Pro se petitions are therefore held to a less stringent standard than those drafted by attorneys. See Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978). Liberal construction, however, does not mean that a court may ignore a clear failure in the pleading to allege facts that set forth a cognizable claim. See Weller v. Dep't of Soc. Servs., 901 F.3d 387, 390–91 (4th Cir. 1990).

Pursuant to 28 U.S.C. § 2255(a):

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

The petitioner must prove the grounds for collateral attack by a preponderance of the evidence.[1]  See King v. United States, 2011 WL 3759730, at *2 (D.S.C. Aug. 24, 2011) (citing Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958)).

### III.  DISCUSSION

Mooney challenges her conviction with a myriad of accusations of prosecutorial misconduct and ineffective assistance of counsel.[2]  The court discusses each category in turn below.

### A.  Prosecutorial Misconduct

Mooney argues that the government committed prosecutorial misconduct, primarily alleging that the government committed discovery abuses but also alleging that it made certain misstatements or failed to correct misstatements by witnesses or the court.

In order to prevail on a claim for prosecutorial misconduct, a petitioner must demonstrate that the prosecutor's conduct was improper and that the improper conduct prejudicially affected her substantial rights.  United States v. Caro, 597 F.3d 608, 624–25 (4th Cir. 2010).  The relevant inquiry is whether the prosecutor's conduct "so infected the [litigation] with unfairness as to make the resulting conviction [or sentence] a denial of

---

[1] In deciding a § 2255 petition, the court shall grant a hearing, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b). The court has reviewed the record in this case and has determined that a hearing is not necessary.

[2] While Mooney has served her underlying term of imprisonment, her supervised release term does not expire until November 2023.  "[A] case is not moot when an associated term of supervised release is ongoing, because . . . a district court could grant relief to the prevailing party in the form of a shorter period of supervised release." United States v. Ketter, 908 F.3d 61, 66 (4th Cir. 2018) (emphasis in original). Accordingly, Mooney's § 2255 is not mooted by her release from imprisonment at a federal correctional institution.

due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986). However, because appeal is the "usual and customary method of correcting errors," a collateral attack under § 2255 provides a far more limited opportunity for relief than a direct appeal. United States v. Frady, 456 U.S. 152, 165 (1982). The doctrine of procedural default bars the consideration of a claim that was not raised at the appropriate time during the original proceedings or on appeal. A petitioner may avoid this bar arising from procedural default by demonstrating either (1) cause and actual prejudice or (2) actual innocence. Id. at 167. Under the cause and actual prejudice test, the petitioner must show some cause for his failure to raise the challenge at the appropriate time and must show that actual prejudice resulted. Failure to establish either prong of this test is fatal to the petitioner's challenge to the procedural bar.

Here, Mooney did not raise her allegations of prosecutorial misconduct during the original proceedings or on direct appeal. Mooney's failure to argue—much less demonstrate—either actual innocence[3] or cause and resulting prejudice is fatal to her ability to bring her prosecutorial misconduct claims. To be sure, Mooney alleges numerous instances of ineffective assistance of counsel, and ineffective assistance of counsel can certainly establish cause for a procedural default. See Murray v. Carrier, 477 U.S. 478, 489 (1986). However, nowhere in Mooney's extensive briefings does she contend that any one of her trial attorneys should have accused the government of prosecutorial misconduct. Still, because Mooney alleges that she received ineffective assistance of counsel in the discovery process, see ECF No. 336 at 32, the court will

---

[3] At best, with respect to actual innocence, she simply reiterates arguments already rejected by the Fourth Circuit that her conduct did not amount to a crime. Mooney's mere disagreement with the Fourth Circuit is not grounds for § 2255 relief.

liberally, and perhaps overgenerously, construe Mooney's petition as arguing that ineffective assistance of her counsel was the cause for her procedural default as to the prosecutorial <u>discovery</u> misconduct.  So construing, the court need only consider actual prejudice with respect to her claim of prosecutorial misconduct in the discovery process.  See <u>Clinton v. United States</u>, 2012 WL 6631730, at *3 (N.D. W. Va. Dec. 19, 2012) (noting that although the petitioner claimed ineffective assistance of appellate counsel, those allegations did not include an assertion that appellate counsel failed to raise the petitioner's claims of prosecutorial misconduct and therefore the petitioner did not show cause for the procedural default).  Nevertheless, for Mooney's benefit, the court explains below that all Mooney's claims of prosecutorial misconduct—both in the discovery process and otherwise—lack merit even if they were not procedurally barred.

### 1.  Allegations of Discovery Misconduct

Mooney claims that certain discovery materials were not turned over and their nondisclosure amounted to prosecutorial misconduct.  First, Mooney argues that nondisclosure of various documents amounted to a violation of <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963).  A <u>Brady </u>violation occurs when a defendant can show that the evidence at issue (1) was favorable to the defendant, (2) material to the defense, and (3) the prosecution had the evidence but failed to disclose it.  <u>Moore v. Illinois</u>, 408 U.S. 786, 794–95 (1972); <u>United States v. Sarihifard</u>, 155 F.3d 301, 309 (4th Cir. 1998).  Evidence is "material" when there is a reasonable probability that, had the evidence been disclosed, the result of the proceedings would have been different.  See <u>Kyles v. Whitley</u>, 514 U.S. 419, 433–34 (1995); <u>United States v. Parker</u>, 790 F.3d 550, 558 (4th Cir. 2015).  Mere speculation as to the materials is not enough.  <u>Caro</u>, 597 F.3d at 619.

The court is entirely unconvinced that Mooney's list of documents that she did not receive prior to her guilty plea constituted <u>Brady</u> materials. Mooney's arguments are devoid of specificity as to how the documents at issue were favorable to her defense and material to the issue of her guilt or punishment. Based on the government's explanation of the documents at issue, which Mooney does not challenge, the court is satisfied that the government did not act improperly with respect to any of the documents. None of the complained-of documents—including emails from attorneys discussing turning over discovery (enumerated as Items B and E in Mooney's petition), agent notes and summaries (Item D), or a random list of notes by an unknown author (Item F)—convince the court that the outcome of Mooney's case would have differed had they been produced prior to her guilty plea. Likewise, Mooney seems to be mistaken in asserting that the government failed to disclose any benefit Harding received in providing his affidavit used at Mooney's sentencing (Item C). The government contends that it provided her Harding's plea agreement and explained the benefit Harding would receive for providing substantial assistance to the government. But even it had not done so, the nondisclosure of this commonplace agreement between the government and a cooperator simply cannot be viewed as determinative of her decision to plead guilty to 49 U.S.C. § 14944(c) for lying to the COA to obtain or maintain accreditation or her sentencing on that charge.

Regardless, even if the nondisclosure of any of these materials constituted a <u>Brady</u> violation, Mooney is barred by her guilty plea from challenging that conduct. In her guilty plea, Mooney agreed and swore under oath to the facts that established her guilt. The Fourth Circuit found that the facts were sufficient to establish the guilty plea. Absent clear and convincing evidence to the contrary, a defendant is bound by the

representations she made during the plea colloquy.  See Burket v. Angelone, 208 F.3d 172, 191 (4th Cir. 2000).  "A valid guilty plea [ ] renders irrelevant—and thereby prevents the defendant from appealing—the constitutionality of case-related government conduct that takes place before the plea is entered." Class v. United States, 138 S. Ct. 798, 200 (2018) (citation omitted); Richardson v. United States, 2015 WL 4366198, at *4 (E.D.N.C. July 16, 2015) (denying petitioner's claim based on alleged prosecutorial misconduct for failure to comply with Brady obligations prior to his guilty plea, and explaining that "[b]ecause petitioner admitted at arraignment that he is in fact guilty of the offense with which he was charged, he is barred from raising an independent claim related to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.") (citing United States v. Ruiz, 536 U.S. 622, 629 (2002); Tollett v. Henderson, 411 U.S. 258, 267 (1973); United States v. Moussaoui, 591 F.3d 263, 279 (4th Cir. 2010)).  Accordingly, Mooney's claims that the government committed prosecutorial misconduct by failing to produce Brady materials are also barred by her guilty plea.

Mooney further claims that some of the allegedly omitted discovery should have been turned over because they were impeachment materials under Giglio v. United States, 405 U.S. 150, 155 (1972), or witness statements under the Jencks Act, 18 U.S.C. § 3500.  The government is not obligated to turn over Giglio or Jencks materials before trial, and because Mooney pleaded guilty, that obligation never arose.  See e.g., United States v. Wooten, 688 F.2d 941, 949 (4th Cir. 1982) ("[T]here is no obligation ordinarily to furnish [Giglio] material prior to trial."); 18 U.S.C. § 3500(a) ("[N]o statement or report in the possession of the United States which was made by a Government witness

or prospective Government witness (other than the defendant) shall be the subject of subpena (sic), discovery, or inspection until said witness has testified on direct examination in the trial of the case.").  Accordingly, the court finds the government's conduct was proper in this regard.

Moreover, even if the alleged discovery omissions did amount to improper conduct properly at issue in this § 2255 petition, Mooney fails to demonstrate that the government's alleged failure to disclose any of the materials so infected the litigation with unfairness to make the resulting conviction or sentencing a denial of due process. For the most part, Mooney utterly fails to explain how any of the materials that she claims she did not receive or received late are exculpatory—much less so exculpatory that they would have realistically impacted her decision to plead guilty or weighed on her sentencing.[4]  Mooney appears to suggest that the mere potential that documents she requested, but did not receive, before her plea may have been exculpatory is sufficient to render their withholding prosecutorial misconduct that prejudiced her.  Unfortunately for

---

[4] In her reply, Mooney specifically argues that certain i600 and i800 adoption forms that she did not receive were exculpatory.  However, the court is entirely unconvinced.  The charge to which Mooney pleaded guilty prohibits lying to the COA to obtain or maintain accreditation, 49 U.S.C. § 14944(c).  Mooney argues that had the court been able to review these documents, the court would have seen that all adoptions from Kazakhstan were completed using the i600 non-Hague process.  The Fourth Circuit has already explained that this fact—even if proved by the documents—does not render her conduct outside the ambit of § 14944(c).  The court likewise does not find that any withholding of these documents prejudiced Mooney at sentencing.  Mooney argues that these documents were relevant to the calculation of loss.  Without unnecessarily entangling itself in the weeds of the parties' arguments at Mooney's sentencing, the court observes that it found actual loss because "prospective parents would not have sought international adoptions from a fraudulently accredited agency, at any price."  ECF No. 299 at 2.  Therefore, even if the i600 and i800 adoption forms show that none of her Kazakhstan adoptions were Hague Convention adoptions, the fact does not negate the actual loss upon which Mooney was sentenced.

Mooney, the standard for a collateral attack under § 2255 based on prosecutorial misconduct is far more demanding and is not satisfied by her speculative and conclusory statements that the materials were exculpatory.  In sum, the court finds no prosecutorial misconduct in the discovery process and that these claims are nonetheless procedurally barred because Mooney has not satisfied the cause-and-actual-prejudice test for the court to disregard her failure to bring her challenge at the appropriate time.

### 2.  Other Allegations of Misconduct

As noted above, Mooney has not articulated cause for failing to bring her non-discovery allegations of prosecutorial misconduct on direct appeal, dooming these claims. However, even if Mooney's non-discovery prosecutorial misconduct claims were not procedurally barred, they still fail on the merits.

First, Mooney claims that the government committed prosecutorial misconduct by failing to address a misstatement by this court in its order on Mooney's objections to the PSR that Kazakhstan was a Hague Country at the relevant time of Mooney's conduct (Item A).  See ECF No. 249.  Mooney argues that the government asserted for the first time that Kazakhstan was not a Hague Country at the appellate stage of the case, and this adversely impacted her sentencing and constitutes prosecutorial misconduct.  Mooney's argument is both a misstatement of the facts and meritless.  The government accurately represented prior to sentencing and appeal that Kazakhstan was not a party to the Hague Convention, and the court explicitly acknowledged that position.  See e.g., ECF No. 312, Sent. Trans. 12:18-24 ("It seems to me the Government's position is that after the false statement, the IAG would not have been able to qualify to do any adoptions in Kazakhstan, because, although they were not a member of the Hague Convention, they

14

required Hague Convention certification in order for somebody to do business there."). Moreover, the issue was entirely inconsequential to Mooney's guilt for the crime underlying Mooney's conviction and her resulting sentence. The crux of Mooney's argument is that when she made her false statements in 2010 and 2011, COA accreditation was only required for organizations conducting adoptions under the Hague Convention. Because IAG provided adoption services in 2010 and 2011 only in connection with two countries that were not parties to the Hague Convention and thus did not require accreditation—Ethiopia and Kazakhstan—her false statements to her accrediting entity were harmless. The Fourth Circuit specifically rejected this argument, holding that "§ 14944(c) prohibits the making of a false statement to an accrediting entity to influence the accreditation decision, regardless of whether that accreditation is legally required." United States v. Mooney, 761 F. App'x 213, 219 (4th Cir. 2019) (emphasis added); see id. at 218 ("[W]hat matters under § 14944(c) is not whether Mooney was required to seek accreditation, what matters is that she did seek accreditation, and then made false statements to maintain that accreditation."). The Fourth Circuit further explained that "[w]hether or not they are legally required, fraudulently obtained accreditations can be used to solicit unwitting victims, and Congress had perfectly sensible cause to prohibit such fraud by any person seeking accreditation." Id. at 218–19. Because Kazakhstan's status as a non-Hague Convention country was immaterial to her guilt and sentencing, Mooney was not prejudiced by the alleged failure to correct the court's misstatement, and she cannot prevail on a claim for prosecutorial misconduct on this basis.

Second, Mooney alleges that there was an inaccuracy in grand jury testimony regarding the charge of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371 (Item G). Specifically, Mooney argues that Special Agent Jaime Perez ("Agent Perez") stated that IAG's care centers were not licensed orphanages, when they were in fact licensed. However, Mooney did not plead guilty to the conspiracy charge, and it was ultimately dismissed pursuant to her plea agreement. In accordance with the plea agreement Mooney solicited, the government filed a criminal information charging Mooney with violating § 14944(c). Mooney pleaded guilty plea to that information and waived her right to indictment on the § 14944(c) charge of her conviction. Mooney fails to argue, and the court fails to see, how the allegedly false testimony by Agent Perez before the grand jury rendered Mooney's guilty plea on a different charge fundamentally unfair. Mooney does not argue that the conspiracy indictment was constitutionally invalid as a result of the allegedly false testimony, and the court is unconvinced that Mooney could make such a showing in light of all the evidence considered by the grand jury that remains unchallenged. And even if she could, the court finds no reasonable probability that the government would not have pursued a § 14944(c) charge against her. The challenge Mooney raises to Agent Perez's testimony has no bearing on whether she submitted false information to an accreditation agency. Mooney has failed to show how Agent Perez's grand jury testimony worked to her actual and substantial disadvantage, infecting her conviction and sentencing with error of constitutional dimensions. Accordingly, Mooney cannot succeed on a prosecutorial misconduct claim based on any inaccuracies in the grand jury testimony related to the conspiracy charge.

Third, Mooney accuses the government of misrepresenting statements made by a COA witness, Jayne Schmidt, regarding COA's regulatory responsibilities in interview notes dated January 7, 2014 (Item H).  The statement at issue concerns whether the COA requires agencies to be compliant with the Hague Convention with respect to all their adoptions, including those in non-Hague Convention countries.  At best, Mooney's position that the government's interview notes inaccurately summarized Schmidt's statements suggests a misunderstanding by the government—not misconduct.  Moreover, as alluded to above, this issue is not material to the charge to which Mooney ultimately pleaded guilty.  Mooney's false statements to the accrediting entity were violative of § 14944(c), regardless of whether or not she was doing business in a Hague Convention country and whether or not COA required compliance with the Hague Convention for IAG's adoptions in Kazakhstan or Ethiopia.

Overall, Mooney has not shown that the government committed prosecutorial misconduct at any turn and likewise has not shown that she has met her burden to avoid the procedural bar against these claims.  Mooney's request for relief based on prosecutorial misconduct is therefore denied.

## B.  Ineffective Assistance of Counsel

Mooney is one tough client to please, claiming that all five of her defense attorneys were ineffective.  In order to have her sentence set aside based on ineffective assistance of counsel, Mooney must fulfill the two requirements stated by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 687–696 (1984).  First, a defendant must show that counsel did not provide "reasonably effective assistance."  Id. at 687.  In other words, to show deficient performance, the defendant must prove that counsel's

17

advice was not "'within the range of competence demanded of attorneys in criminal cases.'" Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)).  Second, "the defendant must show that the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687.  To demonstrate prejudice, the defendant must prove that "there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different." Id. at 694. In the context of a guilty plea, the Supreme Court modified the second prong of Strickland to require a showing that "there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

Having thoroughly reviewed the entire record, the court finds that each of defendant's claims of ineffective assistance of counsel fail under the Strickland test.

### 1. Arrest Warrant

Mooney first argues that her counsel was constitutionally defective because her attorneys failed to challenge her arrest warrant.  Mooney claims that an affidavit prepared by Agent Perez that established probable cause for her arrest contained errors.  The affidavit she cites, however, is an affidavit for a search warrant, not an arrest warrant. Moreover, the arrest warrant was issued upon a finding of probable cause by a grand jury for conspiracy to defraud the United States, in violation of 18 U.S.C. § 371.  ECF No. 3.

Even assuming the existence of a defect in the arrest warrant affidavit, however, such a challenge would have been mooted by a finding of probable cause following the grand jury's indictment.  See, e.g., Denton v. United States, 465 F.2d 1394, 1395 (5th Cir. 1972) (rejecting a defendant's argument that his sentence should be vacated due to a

defective complaint and arrest warrant because "the grand jury indictment of Denton following his arrest remedied any defect in the complaint and arrest warrant"); Cusamano v. Donelli, 2010 WL 2653653, at *3, 8 (S.D.N.Y. July 1, 2010) ("The indictment by the grand jury rendered any deficiency in the criminal complaint moot."). Here, because the grand jury's indictment of Mooney on the conspiracy to defraud charge remedied any alleged defect in the complaint and arrest warrant, Mooney's attorney cannot be ineffective for failing to raise a mooted argument.

### 2. Expert in International Adoption

Mooney claims that she was ineffectively assisted by her second attorney because the attorney informed Mooney that she did not have adequate resources to investigate the case. According to Mooney, her second counsel was subsequently relieved, and an attorney was appointed who had an investigator. Mooney's second attorney explains in her affidavit that the accusations regarding her ability to investigate are untrue. See ECF No. 347. However, even if they were true, Mooney has not shown any resulting prejudice. This attorney only represented Mooney for four months, and Mooney, by her own admission, was appointed new counsel with an investigator. Mooney subsequently elected to plead guilty. Mooney has not shown that her representation by her second attorney weighed on her guilty plea or sentence, and therefore Mooney is not entitled to § 2255 relief on this basis.

Intertangled in her allegations against her second attorney, Mooney argues that none of her attorneys attempted to question any expert in international adoption or interview any government witnesses to verify their accusations. Mooney does not mention any specific government witness that her counsel allegedly failed to interview

and likewise does not explain how any such interview would have been relevant to the charge to which she ultimately pleaded guilty. Moreover, Mooney fails to explain why a reasonable attorney would have consulted an expert on international adoption or how that expert consultation would have affected her guilty plea or sentencing. Rather, it appears to the court that counsel was entitled to rely on sources other than an expert to obtain information regarding the laws of international adoption. Mooney argues that an "adequate investigation"—presumably one where her counsel consulted an expert and interviewed government witnesses—would have revealed multiple misunderstandings by Agent Perez of the statutes and guidelines regulating international adoptions. ECF No. 336-1 at 38. As discussed above, the court does not find any defect Mooney alleges in Agent Perez's affidavit or testimony prejudicial. Therefore, the court does not find that Mooney's attorneys' alleged decisions not to consult an international adoption expert or to interview government witnesses before she pleaded guilty fell below an objective standard of reasonableness or that Mooney was prejudiced as a result.

### 3. Sentencing

Mooney claims that her third attorney was ineffective because he (1) failed to advise her of the elements of the statute, (2) failed to advise her of her potential sentencing exposure, and (3) failed to adequately research the statute. Mooney's claims are belied by her own sworn statements at the guilty plea hearing where she was advised of and stated she understood the elements and penalties for the crime. Mooney signed the plea agreement, which contained the elements and penalties and stated that she agreed to make full restitution to each and every identifiable victim. ECF No. 132. During the plea colloquy, the court likewise advised Mooney of her sentencing exposure, and the

government reiterated the same.  The government read the elements onto the record, summarized the plea agreement, and stated that this was the complete agreement of the parties.  Mooney indicated that everything the government had read was correct and that she understood it and agreed with it.  Mooney agreed she entered into the plea agreement voluntarily, of her own free will and accord, after conferring with her attorney and feeling it was in her best interest.  Mooney was at all times represented by counsel and confirmed that she was satisfied with her counsel.

Absent clear and convincing evidence to the contrary, a defendant is bound by the representations she made during the plea colloquy.  Burket v. Angelone, 208 F.3d 172, 191 (4th Cir. 2000).  "The representations of the defendant—like those by h[er] lawyer and the prosecutor at a hearing, as well as any findings by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings."  Blackledge v. Allison, 431 U.S. 63, 74 (1977).  Solemn declarations in open court carry a strong presumption of verity.  Id.  "In the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict a petitioner's sworn statements made during a properly-conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'"  United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005) (internal citations omitted).

No extraordinary circumstances or clear and convincing evidence exist to give credence to Mooney's arguments now that directly contradict her representations during the plea colloquy—including that she did not know the elements of her offense, that she thought she was pleading guilty to a "mistake on a form," and that she believed that she would receive a probationary sentence with no victims and no restitution.  ECF No. 336

21

at 30.  These bald allegations are simply incompatible with the terms of the plea agreement and Mooney's sworn statement agreeing that the plea agreement was the complete agreement of the parties.  The plea agreement specifically outlines the elements of the offense as willfully and knowingly making a material false statement intended to induce an accrediting decision of an accrediting agency.  Mooney could in no way have misunderstood those terms as pleading guilty to a mistake on a form.  The defense attorney at issue also swears by affidavit that no such probation agreement existed. Further, the issue of the elements of the relevant statute and Mooney's knowledge thereof have already been heavily litigated and resolved in the government's favor.

Mooney moved to withdraw her guilty plea because she claimed, in effect, that no one—not her counsel, not the government, and not the court—understood or informed her that § 14944(c), correctly interpreted, does not criminalize the false statements that were the basis for her guilty plea.  The crux of that Mooney's argument was that § 14944(c)'s criminal prohibition on false statements did not apply to her 2010 and 2011 statements because she was not at that time active in Hague Convention countries and was thus not required by law to accredit her organization.  Mooney also claimed that she was rushed into pleading guilty and that her attorney did not have time to adequately research the statute, causing his error.  The court found that the plea was proper because § 14944(c) did criminalize the false statements at issue, and once a person decided to apply for COA accreditation, they could not lie to obtain the accreditation, no matter how they chose to use it.  Mooney appealed the court's decision, and the Fourth Circuit affirmed.  As the Fourth Circuit explained, "Section 14944(c) makes it a crime to lie to an accrediting entity—like the COA—in order to obtain or maintain accreditation."

<u>Mooney</u>, 761 F. App'x at 218 (citing 42 U.S.C. §§ 14944(a)(2)(A), (c)). "As the district court explained, what matters under § 14944(c) is not whether Mooney was required to seek accreditation; what matters is that she did seek accreditation, and then made false statements to maintain that accreditation." <u>Id.</u>  Additionally, the Fourth Circuit found that the court's Rule 11 plea colloquy was "extensive." <u>Id.</u> at 219. "Because Mooney correctly understood that § 14944(c) applied to her conduct when she entered her guilty plea, the district court did not err in denying her motion to withdraw her plea." <u>Id.</u>  The Fourth Circuit has already ruled that Mooney was properly advised and aware of the elements of her crime, and therefore, her attorney was not ineffective in advising her of those elements, nor was she prejudiced in any way by his alleged lack of research.

### 4.  Failure to Obtain Discovery

Mooney claims that her attorneys were ineffective because they failed to timely obtain discovery and, had they done so, the case would have been dismissed.  As discussed above in the prosecutorial misconduct section, Mooney has not cited any discovery that she did not timely receive that tends to undermine the facts or charge to which she ultimately pleaded guilty.  Accordingly, Mooney has failed to convince this court that there is reasonably probability that her case would have been dismissed or that she would not have ultimately pleaded guilty had her counsel more aggressively pursued discovery.  As the Supreme Court has observed,

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments.  All the pertinent facts cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute.  In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case.  Counsel must predict how the facts, as he understands them, would be viewed by the court.  If proved, would those facts convince a judge or jury of the defendant's guilt? . . . Waiving trial entails the inherent

23

> risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.

<u>McMann</u>, 397 U.S. at 769. Counsel's decision to advise Mooney that it was in her best interest to plead guilty prior to cross-examining witnesses and obtaining all of the potential evidence is not deficient, but is routine and "within the wide range of reasonable professional assistance." <u>United States v. Roane</u>, 378 F.3d 382, 404 (4th Cir. 2004) (citations omitted). Therefore, Mooney's counsel's discovery conduct was neither deficient nor prejudicial.

### 5. PSR Loss Calculation

Mooney next claims that her attorneys were ineffective for failing to appropriately challenge the loss calculation articulated in the PSR. The crux of Mooney's contention is that her counsel was constitutionally deficient for failing to convince the court that her actions regarding adoptions in Kazakhstan were legal and that she therefore had no victims to justify an offense level increase for pecuniary loss under U.S.S.G. § 2B1.1(b).

The loss to the Kazakhstan adoption victims was difficult to reasonably determine, so, in preparing the PSR, USPO used the defendant's gain as an alternative measure in the PSR. The government objected to the omission of the loss amount and number of victims and submitted a sentencing memorandum to that end. Additionally, the government provided a witness to testify regarding the loss amount and a victim to explain the impact on her and her family. Defense counsel filed a reply with numerous exhibits, effectively arguing that because the prospective parents had gotten the children they were seeking, Mooney's conduct resulted in no loss or victims. This court

considered the evidence and ruled for the government.  The PSR was recalculated to include the loss amount using gain as a proxy as calculated for seventy-eight victims.

It is abundantly clear that defense counsel repeatedly argued for the result Mooney desired.  However, the court thoroughly reviewed the matter and found that the clients of IAG relied on the COA accreditation in choosing to do business with IAG and therefore were properly considered victims.  The Fourth Circuit likewise acknowledged that "many of the families who were victims of Mooney's scheme attested that they would not have hired IAG to facilitate their international adoptions had the organization not been accredited" and that "[w]hether or not they are legally required, fraudulently obtained accreditations can be used to solicit unwitting victims."  Mooney, 761 F. App'x at 218.  Counsel for Mooney competently handled the matter, and Mooney's dissatisfaction with the outcome does not negate that fact.

Notably, the government initially argued that the loss amount for the individuals who adopted children from Ethiopia should be counted as loss for the guideline purposes.  Upon defense counsel's objection, the court found that because only Kazakhstan specifically required the COA accreditation, only the Kazakhstan families would be counted as victims.  ECF No. 249.  Therefore, not only did defense counsel diligently pursue all arguments challenging the loss calculation, but defense counsel was successful in excluding Ethiopian adoptions from the loss calculation.  Ultimately, Mooney is dissatisfied with her attorneys because they did not win every argument regarding the loss calculation.  However, if this were the standard, federal prisons nationwide would be

barren, as virtually every unsuccessful defendant would have his or her sentence vacated on a § 2255 motion.

### 6. Kazakhstan Adoptions as Relevant Conduct

Mooney next argues that her attorney should have objected to or challenged the court's ruling that the Kazakhstan adoptions constituted relevant conduct to her COA accreditation fraud conviction. This argument is simply a repackaged version of Mooney's ineffective assistance of counsel claim discussed in the preceding section. The court calculates loss under U.S.S.G. § 2B1.1(b) using the principles of relevant conduct. U.S.S.G. § 1B1.3(a); United States v. Hayes, 322 F.3d 792, 801 (4th Cir. 2003). Relevant conduct includes the offense of conviction, plus "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for the offense, or in the course of attempting to avoid detection or responsibility for the offense." U.S.S.G. § 1B1.3(b)(1)(A). Additionally, if the offenses are of a character that would require grouping under U.S.S.G. § 3D1.2(d), relevant conduct includes acts described in § 1B1.3(b)(1)(A) that were part of the same course of conduct or common scheme or plan as the charge of conviction.

The court found that IAG's Kazakhstan adoptions after 2008 qualified as relevant conduct because they were part of the same course of conduct as the offense of conviction. Accordingly, those adoptions were considered in the court's loss calculation. Mooney complains that her counsel did not object to or challenge this finding. However, counsel did advance this argument in Mooney's sentencing memorandum, ECF No. 207, at the hearing on the parties' objections to the PSR, and at the sentencing hearing. In

Mooney's sentencing memorandum, counsel specifically argued that the court should not consider the adoptions in Kazakhstan as relevant conduct. Id. at 30 ("As repeatedly pointed out in the Presentence report the §1B1.3(a)(1) relevant conduct factors are simply not present when considering Ms. Mooney's offense of conviction despite the Government's assertion otherwise . . . Ms. Mooney plead guilty to giving false statements to Council on Accreditation (COA)[.]  COA provides accreditation to adoption agencies to provide services in Hague Counties.  As noted in the P[S]R the non-profit agency that Ms. Mooney worked for never used the accreditation to complete adoptions in Non-Hague Counties like Ethiopia and Kazakhstan.").  Then, at the hearing on the government's objections to the PSR, Mooney's counsel argued that money paid to IAG by clients seeking adoptions from Kazakhstan after 2008 fell outside the range of relevant conduct.  ECF No. 246 at 22:24–23:3 ("Regardless of whether Kazakhstan required this purported COA accreditation information or not.  If that does not violate . . . the statute to which my client is being held responsible, it shouldn't have any applicability in your determining as to whether or not it counts for loss.").  At her sentencing hearing, Mooney's counsel likewise argued at length that the gain from Kazakhstan adoptions should not be counted as loss and that those clients were not victims since Kazakhstan was not a party to the Hague Convention at the time.  See generally ECF No. 312.  Defense counsel further argued that gains should not be counted as losses because the false statements made by Mooney were immaterial to the adoptions in Kazakhstan.  Id.  The court therefore finds that Mooney received effective assistance of counsel on the issue.  Having made the argument on multiple occasions and received the court's decision on the matter, counsel was not expected to again challenge the sentencing order with

27

more of the same argument.  Certainly, Mooney was not prejudiced by counsel ultimately

accepting the court's considered decision on the extensively-litigated matter.  Even if

counsel challenged the court's decision based on arguments already presented and

rejected by the court, the court would have reached the same conclusion.  "The likelihood

of a different result must be substantial, not just conceivable."  Harrington v. Richter, 562

U.S. 86, 111, 112 (2011).  Here, it is neither.

### 7.  Restitution

Mooney next argues that she received ineffective assistance of counsel because

she was ordered to pay restitution.   Mooney's challenge to the amount of restitution is

not cognizable in a § 2255 proceeding because it does not affect her custody.  United

States v. Mayhew, 995 F.3d 171, 184 (4th Cir. 2021).  Section 2255 provides that:

> A prisoner in custody under sentence of a court ... claiming the right to be
> released upon the ground that the sentence was imposed in violation of the
> Constitution or law of the United States, or that the court was without
> jurisdiction to impose such sentence, or that the sentence was in excess of
> the maximum authorized by law, or is otherwise subject to collateral attack,
> may move the court which imposed the sentence to vacate, set aside or
> correct the sentence.

28 U.S.C. § 2255(a).  "A reduction in restitution is not a release from custody."  Blaik v.

United States, 161 F.3d 1341, 1342 (11th Cir. 1998) (collecting cases).  "[I]t is well-

settled that § 2255 relief may not be granted when the defendant challenges only a fine

or restitution order."  United States v. Coward, 230 F.3d 1354 (4th Cir. 2000)

(unpublished table decision); see also United States v. Hudgins, 201 F. App'x 142, 143

(4th Cir. 2006) (stating that "a § 2255 motion may not be used for the sole purpose of

challenging fines or restitution orders"); Underwood v. United States,  2012 WL

6082916, at *6 (E.D. Va. Dec. 6, 2012) ("A majority of circuit courts hold restitution

claims are not cognizable on collateral review under § 2255 because restitution orders do not meet the provision's 'in custody' requirement.") (collecting cases); but cf. United States v. Luessenhop, 143 F. App'x 528, 531 (4th Cir.2005) (allowing, without discussion of propriety of proceeding under § 2255, an ineffective assistance of counsel claim where defendant made showing that the amount of loss and amount of restitution would have been substantially less). The fact that Mooney is alleging ineffective assistance with respect to restitution does not change this result because she is still seeking to challenge a noncustodial restitution order. See Kaminski v. United States, 339 F.3d 84, 85 n.1 (2d Cir. 2003) (recognizing that, even if defendant could show ineffective assistance with respect to restitution, the district court lacked subject matter jurisdiction to grant relief under § 2255); Carpenter v. United States, 2015 WL 5254185, at *4 (W.D.N.C. Sept. 9, 2015) (same). Therefore, Mooney's assertions that her counsel provided ineffective assistance with respect to the order of restitution are not cognizable under § 2255.

Even if Mooney's § 2255 challenge to her restitution order were proper, Mooney does not assert a viable claim for ineffective assistance of counsel. As Mooney acknowledges, her claim regarding restitution is of the same vein as her previous two claims. It fails for similar reasons. As the court observed in its sentencing order, "Mooney agreed, in her plea agreement, to expanded restitution under 18 U.S.C. § 3663, not limited to the count of conviction, but to each and every identifiable victim that may have been harmed by her pattern of criminal conduct." ECF No. 229 at 3. As discussed above, Mooney's counsel competently litigated the issue of the number of victims and the loss calculation underlying the restitution order. Mooney alleges no specific defect in her

29

counsel's handling of the restitution calculation. Accordingly, Mooney's qualm is with the result, not her attorneys' conduct. Her counsel argued against the court's imposition of restitution. He lost. This does not mean he provided ineffective assistance of counsel.

### 8. Speedy Trial

Mooney also claims that her attorneys were ineffective for failing to file speedy trial requests at her direction, and that her rights were violated by the delay in the litigation process. Mooney does not make the case for a Speedy Trial Act violation or a Sixth Amendment violation of the right to a speedy trial. She simply argues that her attorneys failed to file motions for a speedy trial. Without any explanation of how a statutory or constitutional speedy trial right was violated, the court does not find that Mooney was prejudiced by her counsel not filing the requested motions. However, affording Mooney the benefit of every doubt, the court discusses the relevant laws below.

The Speedy Trial Act (the "Act") requires that a defendant's trial "commence within seventy days from the filing date . . . of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). The Act provides for several excludable delays, including those resulting from the grant of a continuance where the district court finds that "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial"; trial on other charges; and the filing of pretrial motions. 18 U.S.C. §§ 3161(h)(1)(B), (D), (7)(A). If the defendant's trial does not begin within seventy days and the delay is not excludable, the district court "shall" dismiss the indictment with or without prejudice on motion of the defendant. 18 U.S.C. § 3162(a)(2); United States v. Henry, 538 F.3d 300,

304 (4th Cir. 2008).  The defendant bears the burden of proving a Speedy Trial Act violation.  18 U.S.C. § 3162(a)(2).

Mooney entirely fails to make a comprehensible Speedy Trial Act violation claim. She merely notes that the clock started on February 26, 2014 and that the first hearing was on May 28, 2014.  However, Mooney does not account for any excludable delays during this time period—including for several pretrial motions that she filed.  Therefore, Mooney has not carried her burden of showing a violation of the Act based on the timing between her first appearance and the first hearing.  Mooney also suggests that the two continuances granted by this court before her guilty plea violated her speedy trial rights.  She claims that the continuances were improperly granted because the court did not make a finding on the record as to why the ends of justice would be met, contrary to the requirements of 18 U.S.C. § 3161(h)(7)(A).  See also Zedner v. United States, 547 U.S. 489, 507 (2006) (stating that "without on-the-record findings, there can be no exclusion under § 3161(h)(7)").  Presumably, Mooney contends that her counsel should have moved to dismiss the indictment based on these alleged inappropriate continuances, and that the failure to do so constitutes ineffective assistance of counsel.  This argument fails on multiple grounds.

Mooney's co-defendant requested the first continuance for adequate time to prepare based on the complexity of the case and voluminous discovery.  Mooney's second attorney objected to the first continuance, but the court orally ordered the case continued as to all defendants to serve the ends of justice.  Although counsel's third attorney did not object to the second continuance, he was appointed as counsel approximately two weeks prior and indicated he needed additional time to prepare.

Mooney's codefendants also requested the second continuance, which the court again determined served the ends of justice.  Reasonable additional time for effective preparation is a factor expressly set forth in 18 U.S.C. § 3161(h)(7)(B)(iv) for the court's consideration of whether a continuance will serve the ends of justice.  In the instant case, the court considered the parties' reasons for requesting the two continuances and found, in both instances, that the continuances should be granted and that the ends of justice served by the granting a continuance outweighed the best interests of the public and the defendant in a speedy trial.  Although the court did not precisely articulate its reasons for granting the continuances in an order, the continuances were requested by counsel and discussed in open court, and it is "clear from the record that the court conducted the mandatory balancing contemporaneously with the granting of the continuance."  Henry, 538 F.3d at 304; see also United States v. Muhammad, 2011 WL 1576556, at *4 (D.S.C. Apr. 26, 2011) (finding no Speedy Trial Act violation based on lack of "ends-of-justice" findings set forth in the record where the continuances were either granted at the request of defense counsel or in open court, and the reasons were either stated by counsel or the court).  The court was only required to state its findings on the record by the time it ruled on a motion to dismiss for violation of the Act.  See Henry, 538 F.3d at 304.  Here, however, no motion to dismiss was filed, and the court therefore was never given an opportunity to set forth its reasoning in greater detail.  Mooney therefore fails to show that the court neglected to make express "ends-of-justice" findings in violation of the Speedy Trial Act.  If counsel for Mooney had brought a motion to dismiss based on the court's failure to make express findings, it is beyond dispute that the court would have simply made explicit rather than implicit findings and accordingly would have

denied the motion. Because no Speedy Trial Act violation occurred, Mooney cannot

show deficient performance by counsel in failing to pursue a meritless motion for a

speedy trial or a motion to dismiss. See United States v. Mallory, 2010 WL 1039831, at

*2 (E.D. Va. Mar. 19, 2010) (concluding that the court carefully considered the reasons

proffered by defense counsel for granting a continuance and that no Speedy Trial Act

violations occurred).

Even if Mooney could show a violation of the Speedy Trial Act, and a

corresponding failure of performance by counsel, she nonetheless fails to demonstrate

prejudice. If her counsel had moved the court to dismiss the case based on a violation of

her rights, the court would have had to decide whether to dismiss the case with or without

prejudice after considering the factors set forth in 18 U.S.C. § 3162(a)(1). Section

3162(a)(1) sets forth several factors to be considered in determining whether to grant

dismissal with or without prejudice: "the seriousness of the offense; the facts and

circumstances of the case which led to the dismissal; and the impact of a reprosecution on

the administration of this chapter and on the administration of justice." Id. It is clear

from the record that any dismissal would have been without prejudice. The charges

against Mooney were serious, and the impact of a reprosecution on the administration of

the Speedy Trial Act, in particular, and the administration of justice, in general, would

have been slight. See, e.g., Mallory, 2010 WL 1039831, at *3 n.3 ("It is worth noting

that had any Speedy Trial Act violations occurred, the dismissal of the indictment would

have been without prejudice."); Merica v. United States, 2007 WL 4561298, at *3 (W.D.

Va. Dec. 21, 2007) (rejecting ineffective assistance of counsel argument raised in a 28

U.S.C. § 2255 petition because the petitioner failed to show that his counsel's failure to

raise a speedy trial issue prejudiced him, as any dismissal of the case would have been without prejudice); Milligan v. United States, 2006 U.S. Dist. LEXIS 9746, *1–4 (M.D. Fla. Feb. 16, 2006) (concluding that a § 2255 petitioner failed to establish prejudice where he failed to show "a reasonable probability that the outcome of the proceedings would have been different had his counsel moved to dismiss the indictment").  Finally, even if the indictment had been dismissed with prejudice, that would only prevent the government from prosecuting the conspiracy charge.  Because the charge of her conviction was not in the indictment, the government would not have been inhibited from pursuing that charge.

To the extent Mooney contends that her counsel failed to challenge a Sixth Amendment speedy trial violation, that contention likewise fails.  The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ."  U.S. Const. amend. VI.  The Sixth Amendment right to a speedy trial "does not attach until the defendant has been indicted or arrested."  Jones v. Angelone, 94 F.3d 900, 906 n.6 (4th Cir. 1996) (citations omitted).  If the right has been triggered, the court then considers the following four factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's diligence in asserting the speedy trial right; and, (4) any prejudice to the defendant resulting from the delay.  United States v. Thomas, 305 F. App'x 960, 963 (4th Cir. 2009) (citing Barker v. Wingo, 407 U.S. 514, 530 (1972)).  As discussed below, counsel reasonably eschewed making a speedy trial motion as none of these factors tip in Mooney's favor.  Mooney's Sixth Amendment speedy trial right attached on January 24, 2014, when the grand jury returned the indictment against her.  Mooney was adjudged guilty after she pleaded guilty on a count

34

not charged in the indictment on January 14, 2015 and waived her right to indictment on that count.  ECF No. 136.  The delay that Mooney complains of here was approximately one year, which does not create a presumption of a constitutional speedy trial violation.  See Thomas, 305 F. App'x at 963–64 ("[A] seven-month delay was 'entirely too short to trigger further inquiry under Barker[, 407 U.S. at 530].'" (quoting United States v. MacDonald, 635 F.2d 1115, 1117 (4th Cir. 1980) (some internal quotation marks omitted)); DiBruno v. United States, 2014 WL 4636581, at *12 (W.D.N.C. Sept. 16, 2014) ("Regarding the length of the delay, delays exceeding one year are generally "presumptively prejudicial," but delays of less than one year are generally not.").  Moreover, even considering the other factors, the record does not establish a speedy trial violation.  The delay was caused by the complexity of the case, the number of defendants, the filing of innumerous motions by Mooney, and her many requests for appointment of new counsel.  Finally, Mooney has not demonstrated any prejudice from the delay.  Mooney generally claims that evidence was lost as a result of the delay, but the court has already noted that Mooney has not pointed to any missing evidence that had a reasonable probability of affecting her decision to plead guilty.  She likewise insinuates that she suffered anxiety as a result of the delay, but that alone is insufficient to establish prejudice.  Therefore, Mooney fails to demonstrate any deficiency or resulting prejudice from counsel's failure to raise a Sixth Amendment speedy trial challenge.

Because no Speedy Trial Act or Sixth Amendment right to a speedy trial violation occurred, Mooney cannot show any deficient performance arising from her counsel's failure to move for dismissal of the indictment.  She moreover fails to demonstrate prejudice arising from any alleged deficiency of performance in this respect.  As such,

Mooney's claim for ineffective assistance of counsel related to her speedy trial rights fails.

### 9.  Speedy Sentencing

Mooney argues that her counsel was ineffective for not securing a speedy sentencing.  However, the Sixth Amendment's speedy trial guarantee does not apply to the sentencing phase of a criminal prosecution.  Betterman v. Montana, 578 U.S. 437, 448–49 (2016) ("The Sixth Amendment speedy trial right, however, does not extend beyond conviction, which terminates the presumption of innocence.").  The Speedy Trial Act, which Congress passed to give effect to the Sixth Amendment speedy trial right, is likewise inapplicable to sentencing.  Therefore, Mooney cannot succeed on a claim that her counsel was ineffective for failing to enforce a right she did not possess.

### 10.  Raising Ineffective Assistance of Counsel at the Plea Stage

Mooney claims that her third attorney should have filed an ineffective assistance of counsel motion on his own at the guilty plea stage.  As recited above, the court finds none of Mooney's ineffective assistance of counsel claims viable, and, accordingly, Mooney's counsel was certainly not expected to file a meritless ineffective assistance of counsel claim against himself.

### IV.   CONCLUSION

For the foregoing reasons the court **DENIES** Mooney's motion to vacate, set aside, or correct her federal sentence pursuant to 28 U.S.C. § 2255.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**April 26, 2022**
**Charleston, South Carolina**